10






POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Antonio Lopez and<br>Maria Lopez,<br><br>Debtors. | Case No. 10-16785-B-13<br><br>DC No. MHM-1 |

**MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

This disposition is not appropriate for publication. Although it may cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Deanna Hazelton, Esq., appeared on behalf of Michael H. Meyer, Esq., chapter 13 trustee.

D. Max Gardner, Esq., appeared on behalf of the debtors, Antonio Lopez and Maria Lopez.

Before the court is an objection by the chapter 13 trustee, Michael H. Meyer, Esq. (the "Trustee"), to confirmation of the chapter 13 plan (the "Plan") filed by Antonio and Maria Lopez (the "Debtors"). The Plan will pay nothing to the unsecured creditors. The Plan provides for the payment of administrative expenses and for the stripping of a two wholly unsecured mortgages from the Debtors' residence. The Debtors also propose to retain and pay for a 2008 Tab travel trailer (the "Trailer"). The Trailer is collateral for a secured claim held by Kern Schools Federal Credit Union (the "Credit Union") in the amount of $11,000 (the "Trailer Loan"). The secured claim will be paid in full through the Plan in class two. The Trustee contends that retention of the Trailer and payment of the Trailer Loan is not

34

a "reasonable and necessary" expense.[1] The Trustee objects to confirmation of the Plan based on his contention that, (1) the Plan does not provide for all of the Debtors' projected disposable income to be applied to make payments to the unsecured creditors as required by § 1325(b); and (2) the Plan has not been proposed in good faith as required by § 1325(a)(3) (the "Objection").

The Debtors contend that retention of the Trailer and payment of the Trailer Loan is reasonable and necessary because Mr. Lopez uses the Trailer in the course of his employment. The Plan appears to satisfy the elements for confirmation in all respects except the grounds stated in the Trustee's Objection. For the reasons set forth below, the Objection will be sustained.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 1325[2] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) & (L).

**Background and Findings of Fact.**

The Debtors' petition was filed on June 17, 2010. With the petition, they filed their Plan together with all required documents and schedules. The Debtors' combined annual income, stated in Form 22C to be $75,653, is less than the median income for their household size. The Debtors' residence, valued at $200,000, is

---

[1]Although the Trustee uses the term "reasonable and necessary," §1325(b)(2)(A), and most cases, use the term "reasonably necessary."

[2]Unless otherwise indicated, all bankruptcy, chapter, code section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated after October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

encumbered by a first mortgage in the amount of $264,378. The payments on the first mortgage are current. The residence is also encumbered by second and third mortgages in the amounts of $24,763 and $9,900, respectively. The Debtors propose to treat the junior mortgage claims as wholly unsecured pursuant to the authority of *In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997) and *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002).

The Debtors own a 2003 Honda Civic with a fair market value of $3,500 and an unencumbered, non-operational 1997 Chevrolet Silverado pickup with a fair market value of $2,000. Finally, the Debtors own the Trailer with a fair market value of $12,000 and which is encumbered in the amount of $11,000. The contractual payments on the Trailer, $162 per month, were not delinquent at the time the Debtors filed their petition. The Debtors are surrendering their 2004 Toyota Tacoma, listed with a value of $8,000 and encumbered in the amount of $13,500. The schedules show no other secured claims and no priority obligations. The Debtors' general unsecured liabilities, exclusive of the wholly unsecured mortgages, total $48,033. All of the Debtors' personal property, valued at $ 30,844, is scheduled as exempt.

According to Schedule I, the Debtors have two children, ages 14 and 15. Mr. Lopez has been employed as a welder for a railroad company for twelve years. Mrs. Lopez has been employed as an insurance sales agent for about two years. Schedule I shows total net monthly income in the amount of $4,668. It does not list any *per diem* reimbursement payments associated with Mr. Lopez' employment. Schedule J lists the Debtors' expenses in the amount of $4,642, which include their first mortgage payment of $1,701.88. It does not include any work-related expenses nor does it reflect a payment to the Credit Union for the Trailer Loan. The Debtors are left with a disposable income of $25.74.

The Debtors' Plan provides for monthly payments to the Trustee of $400 for a term of 39 months. The Debtors will continue to pay the first mortgage on their

residence outside of the Plan. With the addition of the wholly unsecured junior mortgages and the deficiency for the surrendered vehicle, the total unsecured debt is estimated in the Plan to be $88,196. The unsecured creditors will receive a 0% distribution. Through the Plan, the Debtors will pay the balance of their attorney's fees in the amount of $2,000 as well as approximately $780 to the Trustee as an administrative expense. Also, through the Plan, the Debtors will pay $11,868, principal and interest, to the Credit Union for the Trailer Loan. Through the Plan the Debtors seek to increase the payment to $329.68 per month and thereby accelerate the payoff of the loan.

At the conclusion of the hearing, the court set a briefing schedule for the filing of supplemental evidence and took the matter under submission. The parties waived the right to an evidentiary hearing. The Debtors filed an additional declaration explaining their need to retain the Trailer (the "Declaration"). Mr. Lopez states that he has historically been required to work out of town due to lack of seniority. He contends that retention of the Trailer is necessary to make the Plan payments because it reduces his expenses of working out of town. In 2008 Mr. Lopez worked: one month in Reno, Nevada; eight months in Los Angeles; and two weeks in New Mexico. In 2009, he worked out of town for most of the year in Los Angeles and Reno. Mr. Lopez works a "compressed half-month schedule" in which he works eight days on and then seven days off. He has had to change job locations nearly 100 times in his 12 years with the railroad because of being "bumped" by employees with greater seniority.

For each day that Mr. Lopez works away from home he receives a *per diem* compensation of $57 per day for food and lodging. The Debtors decided to purchase the Trailer in order to avoid dining and lodging expenses. Although some of the railroad employees chose to pool their *per diem* pay and share hotel rooms, Mr. Lopez prefers not to do that for personal reasons which the court accepts and the Trustee does not question. Mr. Lopez states that the Trailer is very small and is

not used for recreational purposes, but solely in the course of his employment.

In support of his Objection the Trustee contends that the Debtors have failed to establish, first, that Mr. Lopez will be required to travel during the term of the Plan, and, second, that his projected travel expenses would exceed the amount of the Trailer Loan plus the associated costs of owning, insuring, transporting and maintaining the Trailer. The Debtors did not offer any evidence from Mr. Lopez' employer that he will be required to work out of town in the future. The Debtor receives $57 per day to cover his living expenses when he is working away from home, but the Debtors did not produce any receipts or any evidence of what it actually costs to live when he is working away from home. The Trustee contends that the Debtors must show that they will spend at least $329.68 each month (the cost of payments for the Trailer Loan) over and above the *per diem* reimbursement, to satisfy the "reasonably necessary" test.

**Issues Presented.**

The issues presented here are: (1) is the Trailer "reasonably necessary" for the Debtors' support; and (2) does the Plan satisfy the "good faith" requirements of § 1325(a)(3), in that it pays nothing to unsecured creditors while providing for acceleration and full payment of the Trailer Loan?

**Analysis and Conclusions of Law.**

**11 U.S.C. 1325 Requirements.** The debtor has the burden of proving each element of confirmation by a preponderance of the evidence. *U.S. v. Arnold and Baker Farms (In re Arnold and Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994) (judg't aff'd 85 F.3d 1415 (9th CA 1996), *cert. denied* 519 U.S. 1054 (1997).) Pursuant to § 1325(a)(3), a debtor cannot confirm a chapter 13 plan which is not filed in good faith.

**The Disposable Income Requirement.** Section 1325(b)(1)(B) provides that, if the trustee or holder of an allowed unsecured claim objects to the

confirmation of the plan, the court cannot confirm the plan unless "the plan provides that all of the debtor's projected disposable income to be received" during the term of the plan is applied to the unsecured claims. Section 1325(b)(2) defines "disposable income" as "current monthly income received by the debtor . . . *less amounts reasonably necessary to be expended"* for, *inter alia, "the maintenance or support of the debtor or a dependent of the debtor* . . ." §1325(b)(2)(A)(i), emphasis added.

The Bankruptcy Reform Act of 2005 ("BAPCPA") changed the manner in which disposable income is determined in the case of *above-median* income debtors. Post-BAPCPA, disposable income for those debtors is determined by deducting statutorily allowed amounts, for specific expenses, from current monthly income. However, for *below-median* income debtors BAPCPA did not change the analysis of disposable income. *In re Urquhart*, 2009 WL 3785573, *4 (Bankr. C.D.Ill., November 12, 2009) ("With respect to below median income debtors, reasonable and necessary expenses remain limited to actual expenses incurred and are subject to scrutiny by the trustee, unsecured creditors, and the court. Debtors continue to bear the burden of proving reasonableness and necessity. BAPCPA did not change the analysis for determining reasonable and necessary expenses for under the median income debtors.")

**The Reasonably Necessary Test.** The analysis of whether a budget item is a necessary expense must be determined on a case-by-case basis. For example, in the case, *In re Smith*, 207 B.R. 888, 890 (9th Cir. B.A.P., 1996), the debtors appealed the bankruptcy court's determination that, as a matter of law, life insurance premiums may never be a necessary expense under § 1325(b)(2)(A), unless required by law. On appeal the court vacated the bankruptcy court's order and remanded the case for further proceedings. The debtors argued that they were elderly and had two dependants, a 21-year-old mentally disabled son and a three-year-old granddaughter

of whom the debtors had custody. *Smith* held that the blanket rule applied by the bankruptcy court was in error because, although some life insurance policies may be estate planning devices, other types are legitimately intended to protect the debtors' dependents. "Like other budget items, whether a life insurance premium is a necessary expense is a matter which must be determined on a case-by-case basis." *Id.* On remand, the *Smith* court directed the bankruptcy court to focus its inquiry on the issue of "whether the policies are reasonably necessary for the support of the debtors' dependants." *Id.*

In the 2000 case, *In re Mills*, 246 B.R. 395 (Bankr. S.D.Cal., 2000), the court cited *Smith*, 207 B.R., 890, for the proposition that the court should consider the necessity of an expense based on the "totality of the circumstances" of the case. *Id.*, 401 ("Instead, the Ninth Circuit Bankruptcy Appellate Panel directed that the trial court consider what is reasonably necessary in the case before it, based upon the totality of the circumstances.").

> Neither the text of § 1325(b)(2)(A) nor its legislative history specifies what types of expenses the court should treat as "reasonably necessary." See *In re Gillead*, 171 B.R. 886, 889 (Bankr.E.D.Cal.1994). Thus, there is no bright line test for determining whether a debtor's expenses are reasonably necessary for his maintenance and support. The reasonableness of the debtor's expenses must be determined from the totality of the debtor's individual circumstances. *Id.* at 890. A debtor must also be allowed some degree of discretionary spending, which must be judged for reasonableness. *Id.*; see also *In re Gonzales*, 157 B.R. 604, 608, 611 (Bankr.E.D.Mich.1993) (noting that even "the expense budget form prescribed by the Official Forms (Schedule J) recognizes that a family cannot live by bread alone").

*In re Mills*, at 401-02.

The court in *Mills* followed the reasoning of the court in *In re Tibbs*, 242 B.R. 511 (Bankr.N.D.Ala.,1999), which stated:

> When examining disposable income, courts need not go so far as to require that the debtor lower his expenses to the poverty level. *In re Sitarz*, 150 B.R. 710, 718 (Bankr.D.Minn.1993). See also *In re Otero*, 48 B.R. 704, 708 (Bankr.E.D.Va.1985) ("It is not in the public interest to squeeze the last dollar from Chapter 13 debtors to fund a Chapter 13 plan."); *In re Riegodedios*, 146 B.R. 691, 693 (Bankr.E.D.Va.1992)

> ('All disposable income' does not mean debtor's prison in a modern sense.'). In fact, when examining disposable income a court "is not expected to, and should not, mandate dramatic changes in the debtor's lifestyle to fit some preconceived norm for chapter 13 debtors." 8 Collier on Bankruptcy § 1325.08[4][b][ii], at 1325-54 (15th ed. rev.1999). *A court may, however, determine that some lifestyle changes may be necessary so that debtors are not "allowed to continue in the lifestyle that drove them to file bankruptcy and at the expense of their creditors." In re Sutliff*, 79 B.R. 151, 157 (Bankr.N.D.N.Y.1987). See *In re Zaleski*, 216 B.R. 425, 431 (Bankr.D.N.D.1997) (*"[C]ourts are loathe to favor kindly expenditures which are for luxury goods or to serve to perpetuate a luxury lifestyle."*).

*Id.* 516, emphasis added.

Thus, the Debtors here bear the burden of persuading the court, by a preponderance of the evidence, based on the totality of the Debtors' circumstances, that retention of the Trailer and payment of the Trailer Loan, is reasonably necessary for the support of the Debtors and/or their dependants.

**Application of the Facts to the "Reasonably Necessary" Test.** Based on their schedules I and J, these Debtors have virtually no disposable income to distribute to the unsecured creditors.[3] Nevertheless, the Trustee has raised a *prima facie* objection to the Debtors' Plan which shifts to the Debtors the affirmative burden to produce evidence to show that the Trailer is a "reasonably necessary" expense.

The Debtors submitted the Declaration attesting to Mr. Lopez' work in 2008 and 2009. However, the Debtors did not submit any evidence to show that Mr. Lopez has been called to work out of town during 2010, or that he likely will be required to work out of town during the term of the Plan. The Debtors did not report the receipt of any *per diem* reimbursement on schedule I or Form 22C. The court therefore infers that Mr. Lopez has not been called to work out of town for at least six months prior to filing the bankruptcy petition.

---

[3]Schedule J shows a monthly net income of $25.74. This amount is less than the monthly payment which is proposed by the Plan of $400.

The Debtors also did not submit any evidence to show that the retention of the Trailer, at a cost of $329.68 per month plus the associated operating expenses, is economically preferable to using the Debtor's *per diem* reimbursement to pay for a private motel room. They did not provide any analysis of the true cost of owning and operating the Trailer, such as the annual registration fee, maintenance, insurance premiums, or additional gasoline costs incurred to tow the Trailer. In view of the complete absence of evidence justifying the Debtors' contention that retaining the Trailer is economically preferable to surrendering the Trailer, the Debtors have failed to sustain their burden of proof that the Trailer is reasonably necessary to their support.

**The "Good Faith" Test.** Pursuant to § 1325(a)(3), a debtor cannot confirm a chapter 13 plan which is not filed in good faith. The debtor has the burden of proving each element of confirmation by a preponderance of the evidence. *In re Arnold and Baker Farms*, 177 B.R. at 654. However, under the authority of Rule 3015(f), the court does not have to make a good faith inquiry and take evidence on the issue unless a prima facie objection is filed. See *In re Lavilla*, 425 B.R. 572, 580 (Bankr. E.D. Cal. 2010).

The Bankruptcy Code does not define "good faith." The Trustee's Objection requires the court to determine, under the totality of the circumstances, whether the Debtors filed the Plan in "good faith." *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1391 (9th Cir. 1982). The court must inquire whether the debtor has acted equitably in proposing a plan. *Id.* at 1390.

**Application of the Facts to the Good Faith Test.** It is undisputed that the Debtors were not delinquent in their payments on the Trailer Loan at the time they filed their bankruptcy case. Yet the Debtors are proposing to increase the payments to the Credit Union from the contractual amount of $162 per month, to the Plan payment amount of $329.68 per month. By placing the Credit Union's claim in

class 2 and proposing to accelerate the payoff with Plan payments that substantially exceed the contractual payment, the Debtors are, in effect, forcing their unsecured creditors to pay for the Trailer. Based on the Debtors' inability to establish an economic rationale for keeping the Trailer in the first place, and the Debtors' proposal to accelerate the payoff of the Trailer Loan at the expense of the unsecured creditors, the court is not persuaded that the Plan was filed in good faith.

**Conclusion.**

Based on the foregoing the court is not persuaded that retention of the Trailer and payment of the Trailer Loan is a reasonably necessary expense. Further, the court is not persuaded that accelerated payment of the Trailer Loan, as proposed in the Plan and at the expense of the unsecured creditors, satisfies the "good faith" test under § 1325(b)(3). Accordingly, the Trustee's Objection to confirmation of the Plan will be sustained. Confirmation of the Plan will be denied.

Dated: December 9, 2010

W. Richard Lee
United States Bankruptcy Judge